UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| RIMA E. LAIBOW, spouse of ALBERT N. STUBBLEBINE, III, deceased,<br><br>    Plaintiff,<br><br>v.<br><br>RICHARD MENASHE, WILLIAM OSER, LISA CASALE, THE COMMUNITY HOSPITAL GROUP d/b/a JFK MEDICAL CENTER, KINDRED HOSPITAL, ABC COMPANIES (1-10), DEFENDANT PARTNERSHIPS (1-10), JOHN DOE PHYSICIANS (1-10), JANE DOE NURSES (1-10), JANE MOE TECHNICIANS, and PARAMEDICAL EMPLOYEES (1-20),<br><br>    Defendants. | Civ. No. 19-4549 (KM) (SCM)<br><br>OPINION |

## KEVIN MCNULTY, U.S.D.J.:

*Pro se* Plaintiff Rima Laibow brings this case on behalf of the estate of her husband, Major General Albert N. Stubblebine, III. Ms. Laibow alleges negligence and statutory violations by several institutions and medical professionals who treated General Stubblebine in the weeks leading up to this death in 2017. Before the Court is Defendant Richard Menashe's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (DE 18).

This motion was filed after the Court had already decided similar prior motions. As a result, much of the following Opinion duplicates a prior Opinion of the Court. (DE 39) For the following reasons, Dr. Menashe's motion is **GRANTED**.

## I. BACKGROUND[1]

### A. The Parties

Ms. Laibow and Gen. Stubblebine were married for twenty-three years before he died on February 6, 2017. (DE 1 ¶¶ 1 & 3). Ms. Laibow is the executor and administrator of his estate and a citizen of Arizona. (DE 1 ¶¶ 1 & 2). At the time of his death, Gen. Stubblebine was without known children, and he had a life expectancy (actuarially speaking, presumably) of 4.6 years. (DE 1 ¶ 3). He was a citizen of Arizona. (DE 1 ¶ 3). The amount in controversy in this dispute exceeds $75,000.00, exclusive of interest and costs. (DE 1 ¶ 4).

Defendant Richard Menashe is an osteopathic doctor with thirty-four years of experience. (DE 1 ¶ 5). He specializes in family medicine. (DE 1 ¶ 5). Dr. Menashe is affiliated with Defendant JFK Medical Center. (DE 1 ¶ 5).

Defendant William Oser is a medical doctor with thirty-four years of experience. (DE 1 ¶ 7). He practices internal medicine. (DE 1 ¶ 7). Dr. Oser is affiliated with Defendant JFK Medical Center.[2] (DE 1 ¶ 7).

Defendant Lisa Casale is a medical doctor who specializes in pulmonology. (DE 1 ¶ 9).

Defendant Community Hospital Group, Inc. ("Community") is a New Jersey non-profit corporation that owns, operates, and does business as JFK Medical Center ("JFK"). (DE 1 ¶ 11; DE 1 ¶ 12)[3]

---

[1] For purposes of this motion, the facts alleged in the complaint, not yet tested by any fact finder, are assumed to be true. *See* Section II.A.1., *infra*. Docket entries will be cited as "DE __."

[2] Ms. Laibow alleges that "Dr. Menashe is affiliated with JFK Medical Center" in paragraph 5 and repeats that allegation verbatim in paragraph 7. (DE 1 ¶¶ 5 & 7). The subject of paragraph 7, however, is Dr. Oser, and so this may be an editing error. Also unclear is whether plaintiff intended to allege that both doctors have thirty-four years of experience.

[3] Ms. Laibow states that she named "JFK Medical Center" separately in her complaint to ensure that the appropriate entity would be joined and receive notice of this action. (DE 1 ¶ 12).

2

Defendant Kindred Hospital is a thirty-four-bed "transitional hospital" in Rahway, New Jersey. (DE 1 ¶ 13). Kindred advertises that as a "transitional care hospital" it offers "the same in depth care [a patient] would receive in a traditional hospital but for an extended recovery period." (DE 1 ¶ 13). It partners with physicians to offer twenty-four-hour clinical care, seven days a week. (DE 1 ¶ 13).

### B. Gen. Stubblebine's Final Weeks

From September 1, 2016, to January 4, 2017, Gen. Stubblebine was a patient at JFK. (DE 1 ¶ 16). On January 4, 2017, he was transferred from JFK to Kindred at the behest of JFK personnel. (DE 1 ¶ 17). At the time, Ms. Laibow was Gen. Stubblebine's attorney-in-fact and health-care representative, but she was not given sufficient notice and did not consent to the transfer. (DE 1 ¶ 17).

Between January 4, 2017 and February 5, 2017, Gen. Stubblebine was a patient at Kindred. (DE 1 ¶ 18). On February 5, 2017, he was moved to Robert Wood Johnson University Hospital, where he died the next day, February 6, 2017. (DE 1 ¶ 18).

During this time, Defendants provided negligent services and deviated from the standard of care with respect to Gen. Stubblebine, which led to his death. (DE 1 ¶ 19–22).

### C. The Causes of Action in the Complaint

Ms. Laibow's complaint alleges eight counts of tort- and statute-based wrongdoing. Each count is at least formally aimed at Kindred and JFK, but Laibow identifies Menashe—and the other individual defendants—in each count. She alleges the following:

#### 1. Counts 1 and 2: Negligence and Wrongful Death (Against Kindred and JFK)

Defendants had a nondelegable duty to exercise reasonable care towards Gen. Stubblebine. (DE 1 ¶¶ 26 & 35). Defendants failed to allocate sufficient resources to adequately care for Gen. Stubblebine and otherwise failed to exercise reasonable care, including by abandoning Gen. Stubblebine at JFK

3

while he needed a ventilator to breathe. (DE 1 ¶¶ 27 & 36). Defendants violated the New Jersey Patient Bill of Rights, N.J.S.A 30:4-24.2, by

- failing to properly evaluate, assess, and document Gen. Stubblebine's nutritional status and needs;
- failing to develop, document, and communicate a coherent, consistent, and medically appropriate treatment plan for Gen. Stubblebine;
- failing to regularly adopt, update, and implement a medically appropriate treatment plan for Gen. Stubblebine;
- failing to adopt, incorporate, and implement a medically appropriate nutritional plan in Gen. Stubblebine's treatment plan;
- failing to update and make necessary changes to the nutritional plan in the treatment plan as Gen. Stubblebine's medical condition evolved;
- allowing non-medical staff to interfere with and block the provision of critically needed parenteral feeding to Gen. Stubblebine after the same was ordered by the attending physician, namely when the Director of Nutrition noted that "nutrition has no place in this patient's care";
- failing to adequately supervise Gen. Stubblebine's care and treatment by failing to take necessary action to reverse medically disastrous decisions outside the scope of practice of non-medical staff, which contradicted the order to provide parenteral nutrition to Gen. Stubblebine;
- repeatedly delaying—for non-medical reasons—for over three weeks the installation of a PEG tube ordered for Gen. Stubblebine as medically necessary for his nutrition;
- failing to develop, document, communicate, and implement a coherent, consistent, and medically appropriate treatment plan for Gen. Stubblebine to ensure his adequate hydration;

4

- failing to take necessary action to ensure that Gen. Stubblebine was sufficiently hydrated, which resulted in numerous instances of dehydration-induced tachycardia, which in turn caused long-term damage to his heart and kidneys;
- prescribing beta blockers, a medically inappropriate medication, to address Gen. Stubblebine's dehydration-induced tachycardia and other cardiac arrythmias, which significantly worsened Gen. Stubblebine's physical condition and caused his death;
- violating the Patient Bill of Rights when a physician attempted to circumvent Ms. Laibow's refusal to allow the administration of beta blockers by surreptitiously attempting to force their administration medications while Ms. Laibow was not present;
- failing to develop, document, and communicate a coherent, consistent, and medically appropriate treatment plan to ensure that muscle deconditioning, muscle wasting, pressure sores or decubitus ulcers would not develop in a comatose and otherwise immobilized and incapacitated Gen. Stubblebine;
- failing to implement or execute a coherent, consistent, and medically appropriate treatment plan to ensure that muscle deconditioning, muscle wasting, pressure sores or decubitus ulcers would not develop in a comatose and otherwise immobilized and incapacitated Gen. Stubblebine;
- wrongfully hiding and actively concealing Gen. Stubblebine's rapidly deteriorating skin and muscle condition, which quickly developed massive decubitus ulcers and pressure sores;
- failing to implement a regular schedule for turning Gen. Stubblebine's body to prevent or slow the development of massive decubitus ulcers and pressure sores on Gen. Stubblebine's body;

- using an ill-fitting, inappropriately designed intubation harness, which caused Gen. Stubblebine to suffer a facial decubitus ulcer, causing his upper lip to become severely damaged;
- providing inadequate nursing care by restricting movement and lacking proper decompression boots and pressure stocking, which caused Gen. Stubblebine to develop deep vein thrombosis,
- inappropriately administering medications and drugs that were not indented for Gen. Stubblebine, including insulin, while his records and charts demonstrated Decedent's low blood sugar; and
- failing to identify, incorporate and implement into Gen. Stubblebine's treatment plan cardiac resuscitation procedures, the failure of which exacerbated and compounded the negative impact of his February 5, 2017 cardiac arrest and further caused or contributed to his death on February 6, 2017.

(DE 1 ¶¶ 28 & 37).

Gen. Stubblebine was admitted to JFK with aspirational pneumonia and sepsis, which improved, but the sepsis returned more virulently as a result of a nosocomial infection caused by poor sanitary conditions. (DE 1 ¶¶ 28 &37). These infections included MRSA, C. diff., and pseudomonas. (DE 1 ¶¶ 28 & 37). They required the administration of stronger medications, which in turn were more toxic and caused more kidney and other organ damage. (DE 1 ¶¶ 28 & 37). Defendants' documentation of Gen. Stubblebine's care and treatment was lax, inaccurate, and inadequate. (DE 1 ¶¶ 28 & 37).

### 2. Counts 3 and 4: Negligence *Per Se* Under the New Jersey Patient Bill of Rights (Against Kindred and JFK)

Defendants failed to ensure, preserve and otherwise provide for Gen. Stubblebine's rights under N.J. Stat. Ann. § 30:4-24.2 and New Jersey common law. (DE 1 ¶ 48–49 & 56–57). Gen. Stubblebine suffered severe injuries and damages, including dehydration, malnutrition, weight loss, improper treatments, pressure ulcers, infections, extreme pain and discomfort,

increased expenses associated with further surgical pain and expensive surgical procedures, mental and emotional anguish, a significantly decreased quality of life, deprivation of dignity, general and specific neglect and lack of care, and substantial costs and expenses for medical care and treatment and ultimately suffered a prolonged, agonizing, untimely, and likely preventable death. (DE 1 ¶ 48–49 & 56–57).

### 3. Counts 5 and 6: Negligent Supervision (Against JFK and Kindred)

Defendants knew or should have known that their patients, including Gen. Stubblebine, were elderly and greatly limited in their ability to move and to communicate their needs clearly and effectively and needed particular care and supervision. (DE 1 ¶ 59–61 & 63–65). Defendants failed to exercise adequate care in the supervision of the treatment of their elderly patients, including Gen. Stubblebine, particularly with respect to his inability to communicate his health needs clearly and effectively. (DE 1 ¶ 59–61 & 63–65). Gen. Stubblebine sustained severe personal injuries, endured great pain and suffering, incurred medical expenses for the care and treatment of those injuries, and ultimately suffered a prolonged, agonizing, untimely, and likely preventable death. (DE 1 ¶ 59–61 & 63–65).

### 4. Counts 7 and 8: Punitive Damages (Against JFK and Kindred)

Defendants caused Gen. Stubblebine to sustain and suffer severe personal injuries and damages of both a permanent and temporary nature. (DE 1 ¶ 68 & 71). Gen. Stubblebine was forced to endure great pain and suffering, incur medical expenses for the care and treatment of said injuries, and ultimately suffered a prolonged, agonizing, untimely and likely preventable death. (DE 1 ¶ 68 & 71).

## D. Procedural History

On February 1, 2019, Ms. Laibow sued Drs. Richard Menashe, William Oser & Lisa Casale, the Community Hospital Group d/b/a JFK Medical Center, Kindred Hospital, ABC Companies (1–10), Defendant Partnerships (1–10), John Doe Physicians (1–10), Jane Doe Nurses (1–10), Jane Moe Technicians, and

Paramedical Employees (1–20). (DE 1). Drs. Menashe, Oser, and Casale each answered and crossclaimed against the other defendants. (DE 4, 5 & 8).

All defendants moved to dismiss. Dr. Menashe's motion to dismiss, the subject of this opinion, was filed on June 7, 2019. (DE 18). Ms. Laibow opposed the motions of JFK and Drs. Casale and Oser in a filing also dated June 7. (DE 20). The letter filed alongside her brief reads as follows:

> Enclosed please find for filing, an Original copy of the following document:
>
> (1) Plaintiff's Brief in Opposition to Motion/ Cross-motion to Dismiss Plaintiff's Complaint filed by Defendants Casales [sic], Oser and JFK Hospital allegedly for Plaintiff's Lack of Authorization to Represent the Estate of the Decedent in this Action.
>
> Thank you for your assistance in this matter.

(DE 20-1). I interpret this to mean that Ms. Laibow intends to rely on her earlier brief as her opposition to Dr. Menashe's motion.

On November 21, 2019, I dismissed Ms. Laibow's complaint as against Dr. Casale and Kindred. (DE 40). On November 26, I dismissed the complaint as against Community, JFK, and Dr. Oser. (DE 42).

## II. DISCUSSION

Because this matter involves a controversy between citizens of different states and the amount in controversy is alleged to exceed the sum of $75,000, this Court has jurisdiction pursuant to 28 U.S.C. § 1332. Federal procedural law and New Jersey substantive law will apply. *See Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938).

### A. Standard of Review

Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Animal Sci. Prods., Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n.9 (3d Cir. 2011). For the purposes of a motion to dismiss, the facts alleged in the complaint are accepted as true and

8

all reasonable inferences are drawn in favor of the plaintiff. *N.J. Carpenters & the Trs. Thereof v. Tishman Const. Corp. of N.J.*, 760 F.3d 297, 302 (3d Cir. 2014).

Federal Rule of Civil Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570; *see also W. Run Student Hous. Assocs., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 169 (3d Cir. 2013). That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678.

Where, as here, the plaintiff is proceeding *pro se*, the complaint is "to be liberally construed," and, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007). Nevertheless, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013). "While a litigant's pro se status requires a court to construe the allegations in the complaint liberally, a litigant is not absolved from complying with *Twombly* and the federal pleading requirements merely because s/he proceeds pro se." *Thakar v. Tan*, 372 F. App'x 325, 328 (3d Cir. 2010) (citation omitted).

The Third Circuit has liberally permitted pleading amendments to ensure that "a particular claim will be decided on the merits rather than on technicalities." *Dole v. Arco Chem. Co.*, 921 F.2d 484, 487 (3d Cir. 1990).

9

Indeed, where a complaint is dismissed on Rule 12(b)(6) grounds, "a District Court must permit a curative amendment, unless an amendment would be inequitable or futile." *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004) (emphasis added); *accord Phillips v. Cty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008) (citing *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) (citing *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000)).

### B. Dr. Menashe's Motion to Dismiss

Dr. Menashe asks this Court to dismiss Ms. Laibow's complaint for failure to state a claim under Rule 12(b)(6).[4] (DE 18-9). Specifically, he asserts that Ms. Laibow, a *pro se* plaintiff, cannot sue on behalf of her late husband's estate. (DE 18-9). Ms. Laibow opposes this motion, claiming that it is frivolous. A substantial portion of her opposition is devoted to her demand that the Court impose sanctions.[5] (DE 20).

Title 28, United States Code, Section 1654 guarantees that "[i]n all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein." Although a non-lawyer is entitled to represent herself *pro se*, she may not appear *pro se* on behalf of another person or entity. *Schneller v. Crozer Chester Med. Ctr.*, 276 F. App'x

---

[4] Dr. Menashe's theory relies on federal court procedures as embodied in rules and interpretive case law. Out of caution, I consider whether the matter would be considered under Rule 12(b)(1), rather than 12(b)(6), if the issue were treated as one of standing. *See St. Thomas-St. John Hotel & Tourism Ass'n v. Virgin Islands*, 218 F.3d 232, 240 (3d Cir. 2000) ("The issue of standing is jurisdictional."). I conclude that no further analysis is required because it would make no difference. Where, as here, the jurisdictional challenge is directed to the face of the complaint, the court's standard of review is indistinguishable from the familiar Rule 12(b)(6) standard.)). "A facial 12(b)(1) challenge, which attacks the complaint on its face without contesting its alleged facts, is like a 12(b)(6) motion in requiring the court to 'consider the allegations of the complaint as true.'" *Hartig Drug Co. Inc. v. Senju Pharm. Co.*, 836 F.3d 261, 268 (3d Cir. 2016) (citation omitted).

[5] Ms. Laibow's demand for sanctions is, again, formally directed at JFK and Drs. Casale and Oser. For purposes of this opinion, I assume that the sanctions motion is also directed at Dr. Menashe.

169, 170 n.1 (3d Cir. 2008). That rule has particular application to an appearance on behalf of an entity that is not a natural person. *See also Marrakush Soc'y v. N.J. State Police*, No. 09-2518, 2009 U.S. Dist. LEXIS 68057 at *92 (D.N.J. July 30, 2009) ("Any juridical entity (meaning, any fictitious/artificial/legal person) cannot appear in legal proceedings pro se.").

In *Estate of Twardy v. Lakes of Larchmont Condo Ass'n*, No. 15-6501, 2016 U.S. Dist. LEXIS 65322 at *1, 2016 WL 2901664 (D.N.J. May 18, 2016) (Hillman, J.), the estate's executor filed a *pro se* complaint on behalf of the estate. *Id.* The case came before the court on plaintiff's *in forma pauperis* motion, but the court expanded its inquiry to consider whether the executor was entitled to prosecute the action in the first place. *Id.* at *2 ("[I]t is highly questionable whether an executor of an estate who is not an attorney may file suit on behalf of an estate.").

*Estate of Twardy* collects some of the most pertinent case law. It cites, but does not explicitly adopt, the most liberal standard of *pro se* representation, which is that an executor may represent the estate *pro se*, but only if she is the sole beneficiary *and* the estate has no creditors:

> The executor of the Estate, Francis Twardy, is not an attorney and is prosecuting the claims of the Estate. The United States Supreme Court in *Rowland v. Cal. Men's Colony*, 506 U.S. 194, 201–02 (1993) reinforced the rule that corporations and other artificial entities may appear in federal court only through counsel. Thus, it is highly questionable whether an executor of an estate who is not an attorney may file suit on behalf of an estate. *See, e.g., In re Olick*, 571 F. App'x 103, 106 (3d Cir. 2014) (citing *Rowland*, 506 U.S. at 201–02) (other citation omitted) (finding that a *pro se* trustee may not represent the trust in federal court because he is not an attorney and without counsel the trust may not appear in federal court); *c.f. Gray*, 352 F. App'x at 656 n.1 (citing *Pridgen v. Andresen*, 113 F.3d 391, 393 (2d Cir. 1997)) (noting that the appeal also raised a question as to whether Gray, as a non-lawyer, may represent the estate, but not reaching the question because the decision was based on the holding that the estate may not proceed *in forma pauperis*); *Caputo v. Forceno*, No. 15-1911, 2015 U.S. Dist. LEXIS 58536 at *2 (E.D. Pa. May 5, 2015) ("Federal

11

courts generally will only permit a non-attorney to proceed *pro se* in her capacity as the administratrix of an estate when she is the sole beneficiary and the estate has no creditors.") (citing *Johnson v. Marberry*, 549 F. App'x 73, 75 (3d Cir. 2013) (per curiam) (pro se litigant could not prosecute claims on behalf of estate/heirs); *Malone v. Nielson*, 474 F.3d 934, 937 (7th Cir. 2007) (per curiam) ("[I]f the administrator is not the sole beneficiary of the estate, then he or she may not represent the estate in court."); *Jones ex rel. Jones v. Corr. Med. Servs., Inc.*, 401 F.3d 950, 952 (8th Cir. 2005) ("'[W]hen an estate has beneficiaries or creditors other than the administratrix or executrix, the action cannot be described as the litigant's own, because the personal interests of the estate, other survivors, and possible creditors will be affected by the outcome of the proceedings.'"))

*Id.* at *2–3.

Even under the most liberal view, then, a *pro se* plaintiff purporting to represent a decedent's estate must demonstrate that the estate has no other beneficiaries or creditors. The purpose of this rule is to ensure that the rights of the estate's beneficiaries or creditors are adequately protected. *See Murray v. City of Phila.*, 901 F.3d 169, 171 (3d Cir. 2018) ("Attorneys' training, experience, and their 'ethical responsibilities and obligations' help ensure that a represented party's interests are not squandered . . . . Only attorneys may be sued for legal malpractice; a represented party could not seek recourse against a non-attorney for even the most egregious conduct." (citations omitted)).

Ms. Laibow's opposition fails to establish that she should be permitted to proceed as the *pro se* representative of Gen. Stubblebine's estate. The complaint is consistent with a conclusion that Ms. Laibow is the sole beneficiary of the estate—it states that at the time of his death, Gen. Stubblebine was without known children—but it does not precisely allege that. (DE 1 ¶ 3).[6] Moreover, Dr. Menashe produced a decision of the Virginia Court

---

[6] To her opposition brief, Ms. Laibow attaches a copy of what purports to be Gen. Stubblefield's Last Will and Testament. (DE 20, Ex. A). Analysis of the status of the heirs and creditors nevertheless remains outside the scope of this, a Rule 12(b)(6) motion to dismiss the complaint.

of Appeals that suggests that, at the time of his divorce from an earlier wife, Gen. Stubblebine had two adopted children. (DE 18-7). At any rate, Ms. Laibow's complaint fails to allege the other prerequisite—that the estate does not have any creditors.

Ms. Laibow's brief in opposition also relies on authority that is not quite on point:

> [C]ontrary to Defendants' unwarranted misrepresentations, both New Jersey law (N.J.R 1:21-1(4) . . . and [] Third Circuit case law have plainly held that a *pro se* party, who is the real party in interest in an estate (as the Plaintiff is as the sole beneficiary of the Estate of the Decedent), may in fact appear and speak for that estate while acting *pro se*. *See, e.g., Murray v. City of Philadelphia*, No. 16-3145 [901 F.3d 169] (3rd Cir. 2018) . . . .

(DE 20 ¶ 4).

N.J.R. 1:21-1(4) is a state court rule. It provides that "[a] person not qualifying to practice pursuant to the first paragraph of this rule shall nonetheless be permitted to appear and prosecute or defend an action in any court of this State if the person . . . is a real party in interest to this action." I cannot apply state law standards as to who is a "real party in interest," however. A federal court sitting in diversity is bound to apply federal—not state—rules of court procedure. *See Erie*, 304 U.S. at 78.

The cited *Murray* decision does address federal standards. It does not directly support Ms. Laibow's position here, however, because it was deciding a different issue.

*Murray* cites at length the general rule that a non-lawyer may not represent another person or entity in federal court:

> Although an individual may represent herself or himself pro se, a non-attorney may not represent other parties in federal court. *See Collinsgru v. Palmyra Bd. of Educ.*, 161 F.3d 225, 232 (3d Cir. 1998) ("The rule that a non-lawyer may not represent another person in court is a venerable common law rule."), *abrogated on other grounds by Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516 (2007). This principle has been applied by the Supreme Court, this Court, and other courts in various contexts.

13

*See, e.g., Rowland v. Cal. Men's Colony*, 506 U.S. 194, 202 (1993) (recognizing that corporations must be represented by counsel and that "save in a few aberrant cases, the lower courts have uniformly held that 28 U.S.C. § 1654 . . . does not allow corporations, partnerships or associations to appear in federal court otherwise through a licensed attorney" (footnote omitted)); *Simon v. Hartford Life, Inc.*, 546 F.3d 661, 667 (9th Cir. 2008) (holding that a non-lawyer could not litigate pro se on behalf of an ERISA plan); *Osei-Afriyie [v. Med. Coll. of Pa.]*, 937 F.2d [876,] 882 [(3d Cir. 1991)] ("We hold that Osei-Afriyie, a non-lawyer appearing pro se, was not entitled to play the role of attorney for his children in federal court."); *Phillips v. Tobin*, 548 F.2d 408, 411–12 (2d Cir. 1976) (holding that a non-attorney could not appear pro se to conduct a shareholder's derivative suit).

*Murray*, 901 F.3d at 170–71.

*Murray* then disallows representation by a plaintiff who, unlike Ms. Laibow, was a *non-beneficiary* administrator of the estate. Thus *Murray's* holding neither favors nor disfavors Ms. Laibow's position here. In so holding, however, *Murray* emphasized the policy considerations underlying the general rule requiring attorney representation:

> We turn to whether a non-attorney, non-beneficiary administrator like Murray conducts her "own case" when representing an estate in federal court. 28 U.S.C. § 1654. The answer is no. If an estate has one or more beneficiaries besides the administrator, then the case is not the administrator's own because the interests of other parties are directly at stake. The interests of other parties, such as beneficiaries, may not be represented by a non-attorney administrator of an estate. Accordingly, we hold that this case is not Murray's own and that she may not conduct it pro se on behalf of her granddaughter, the estate's sole beneficiary.
>
> Our holding accords with those of our sister Courts of Appeals to consider the question we decide today. Further, practical considerations support our holding. Attorneys' training, experience, and their "ethical responsibilities and obligations" help ensure that a represented party's interests are not squandered. *Collinsgru*, 161 F.3d at 231; *see Osei-Afriyie*, 937 F.2d at 882 (holding that a pro se father's "lack of legal experience has nearly cost his children the chance ever to have any of their claims

14

heard."). Only attorneys may be sued for legal malpractice; a
represented party could not seek recourse against a non-attorney
for even the most egregious conduct. See *Collinsgru*, 161 F.3d at
231. Accordingly, our holding limiting pro se representation
pursuant to § 1654 "serve[s] the interests of the represented party
as well as the interests of adversaries and the court." *Pridgen*, 113
F.3d at 393.

*Murray*, 901 F.3d at 171–72.

All of that said, the *Murray* decision might be read to suggest in dictum that, if faced by the issue, it would adopt what I have termed the "liberal view" that the sole beneficiary of an estate with no creditors may represent it in federal court. *Murray* cited with approval several cases that, if only by negative implication, acknowledge or adopt that view:

See, e.g., *Rodgers* [*v. Lancaster Police & Fire Dep't*, 819 F.3d 205,
211 (5th Cir. 2016)]; (holding that a person may represent an
estate pro se "if that person is the only beneficiary and the estate
has no creditors"); *Malone v. Nielson*, 474 F.3d 934, 937 (7th Cir.
2007) (per curiam) ("[I]f the administrator is not the sole
beneficiary of the estate, then he or she may not represent the
estate in court."); *Jones* [*ex rel. Jones v. Corr. Med. Servs., Inc.*, 401
F.3d 950, 952 (8th Cir. 2005)] ("[The administrator] is not the only
beneficiary/creditor of [the] . . . estate. Thus, as a nonattorney, [he]
may not engage in the practice of law on behalf of others.");
*Shepherd v. Wellman*, 313 F.3d 963, 970-71 (6th Cir. 2002);
*Pridgen*, 113 F.3d at 393 ("[A]n administratrix ... of an estate may
not proceed pro se when the estate has beneficiaries or creditors
other than the litigant."); see also *Reshard v. Britt*, 839 F.2d 1499
(11th Cir. 1988) (en banc) (plurality opinion) (per curiam) (affirming
by operation of law as a result of an equally divided en banc court
the district court's ruling that estate representatives could not
proceed pro se when the estate had other beneficiaries).

*Murray*, 901 F.3d at 172 n.3.

Ms. Laibow has not pled or otherwise established both that she is the sole beneficiary of the estate and that there are no other creditors. Dr. Menashe's motion to dismiss is therefore **GRANTED**. The dismissal is, however, without prejudice, because it is not futile to anticipate that this defect could be

15

cured— if not by amendment of the complaint, then surely by retention of an attorney to represent the estate.

### III. CONCLUSION

For the reasons set forth above, the motion to dismiss is **GRANTED**.

An appropriate order follows.

Dated: January 8, 2020

Hon. Kevin McNulty
**United States District Judge**